IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF AMERICA

v.

JOSEPH MONROE WILSON,

Defendant.

CRIMINAL ACTION FILE
NO. 4:12-CR-00023-RLV-WEJ

## NON-FINAL REPORT AND RECOMMENDATION

This matter is before the Court on a Preliminary Motion to Suppress Evidence
[20], which defendant, Joseph Monroe Wilson, perfected on October 5, 2012. (See
Def.'s Particularized Mot. to Suppress Evid. and Br. in Supp. [29].) Defendant
contends that (1) the search warrant issued by the undersigned was not supported by
probable cause; (2) the only evidence which provided probable cause was stale; (3) the
application was overbroad (leading to an overbroad warrant); and (4) the good faith
exception to the exclusionary rule, see United States v. Leon, 468 U.S. 897 (1984),
does not apply. Mr. Wilson seeks an evidentiary hearing under Franks v. Delaware,
438 U.S. 154 (1978), and asks, under the "fruit of the poisonous tree" doctrine, that the

laptop computer obtained in the search of his home be suppressed along with any statements he made.

After consideration of the defendant's arguments and of those made by the Government (see Gov't Resp. to Def.'s Mot. to Suppress Evid. [33] ("Gov't Resp.")), the undersigned concludes that (1) there was probable cause to issue the search warrant here; (2) the evidence supporting probable cause was not stale; (3) the application and warrant were not overbroad; and (4) even if probable cause were lacking, Leon applies. Morever, defendant has failed to meet the high threshold necessary to obtain a Franks hearing. Therefore, the undersigned **RECOMMENDS** that defendant's Motions be **DENIED**.

## I. THE SEARCH WARRANT

On March 22, 2012, Jeff Adkins, an Inspector with the United States Postal Inspection Service ("USPIS"), presented an Application and Affidavit for Search Warrant [33-1] ("Appl.") to the undersigned seeking a warrant to search the defendant's residence, located at 160 Mary Lane in Dallas, Georgia. (Id. ¶ 2.) Inspector Adkins asserted that he had probable cause to believe that this residence held

evidence of the possession and receipt of child pornography (in violation of 18 U.S.C. §§ 2252 and 2252A).  (Id. ¶ 4.)[1]  He based that assertion on the following information.

In October 2010, the USPIS and the Toronto Police Service ("TPS") began an investigation into a Canadian movie production company that offered products for sale via the Internet that would be delivered through the United States Postal Service ("USPS") and by internet download.  (Appl. ¶ 5.)  This company had received several complaints from members of the public regarding the sale of child pornography, and it was the object of over twenty complaints to the National Center for Missing and Exploited Children CyberTips.  (Id.)  CyberTips stated that the Canadian movie production company was offering various videos for sale that contained child pornography.  (Id.)

Law enforcement (i.e., USPIS and TPS) accessed the website of the Canadian movie production company and viewed previews of movies, summaries of movies, and ordering information.  (Appl. ¶ 6.)  The USPIS also made undercover purchases of videos from that company.  (Id.)  The videos from those undercover orders were transferred to a shipping facility in North Tonawanda, New York for fulfillment and

---

[1] Introductory paragraphs of the Affidavit provided the Court with background information about Inspector Adkins's training and experience and where he obtained the information contained therein.  (Appl. ¶¶ 1, 3.)

then shipped via USPS Priority Mail to a post office box in Nolensville, Tennessee. (Id.)  An investigation ensued, which resulted in the execution of a search warrant at the Canadian movie production company in May 2011. (Id. ¶ 7.)  During the execution of that search warrant, agents seized hundreds of DVD movies, photo DVDs, and computers that contained movies and photos.  (Id. ¶ 8.)  Law enforcement found that movie and photo DVDs had been shipped to customers who had ordered them.  (Id.) Agents also located USPS Priority Mail packaging and shipping labels to addresses that corresponded with customer records.  (Id.)

The Canadian movie production company's website offered hundreds of movies for sale, some of which were commercial movies. (Appl. ¶ 9).  The producer retained copies of most of the produced movies on computer systems at the business.  (Id.) Most of the commercial movies featured a boy in them but may not have had any nudity.  (Id.)  Most of the movies that were for sale (produced by or for the website operator) contained child nudity.  (Id.)  Law enforcement reviewed the movies and determined that many of them contained child pornography.  (Id.)

During the execution of the search warrant, law enforcement seized the Canadian movie production company's customer database.  (Appl. ¶ 10.)  That database contained order and purchase records, including each transaction and invoice.

4

Joseph Wilson, of 160 Mary Lane, Dallas, Georgia 30157, was determined to be a customer. (Id. ¶ 11.) A review of the records revealed that defendant had twenty-seven unique transactions between January 28, 2009, and March 2, 2011, totaling $2,452.13. (Id.) All the transactions showed a billing and shipping address of either 160 Mary Lane, Dallas, Georgia or P.O. Box 400, Dallas, Georgia 30157, and a telephone number of either 404-358-2247 or 770-459-6591. (Id.) The transactions also showed three different confirmation email addresses. (Id.)

Defendant ordered the following movies and other materials from the Canadian movie production company between February 7, 2011, and March 2, 2011, in three separate transactions. On February 7, 2011, defendant ordered the following:

| | |
|---|---|
| Product Name | Crimean Vacation Part 2: Dirty Digs & Silly Splashes (2006) DVD |
| Price | $23.95 |
| | |
| Product Name | Capital Fellows (2004) DVD |
| Price | $18.95 |
| | |
| Product Name | Puppy Dog Tails (2004) DVD |
| Price | $10.95 |
| | |
| Product Name | Vladik & Sanja's Camp Out (2007) DVD |
| Price | $19.95 |
| | |
| Product Name | FKK Australia (1999) DVD |
| Price | $17.95 |

5

|              |                                   |
|--------------|-----------------------------------|
| Product Name | <u>Summer in France</u> (1995) DVD |
| Price        | $13.95                            |

|              |                                |
|--------------|--------------------------------|
| Product Name | <u>Sand Buddies</u> (1992) DVD |
| Price        | $17.95                         |

On February 23, 2011, defendant ordered the following:

|              |                                     |
|--------------|-------------------------------------|
| Product Name | <u>Azov Buds Portfolio</u> (2010) PHOTOS |
| Options      | LINKS WILL BE VALID FOR 7 days     |
| Price        | $14.95                              |

On March 2, 2011, defendant ordered the following:

|              |                                |
|--------------|--------------------------------|
| Product Name | <u>Boys in the Mud</u> (2005) DVD |
| Price        | $9.95                          |

|              |                                     |
|--------------|-------------------------------------|
| Product Name | <u>Oskar in Two Summers</u> (1999) DVD |
| Price        | $9.95                               |

|              |                                  |
|--------------|----------------------------------|
| Product Name | <u>River Escape, The</u> (2001) DVD |
| Price        | $9.95                            |

|              |                                  |
|--------------|----------------------------------|
| Product Name | <u>Sun & Sand Part 1</u> (1999) DVD |
| Price        | $9.95                            |

|              |                                  |
|--------------|----------------------------------|
| Product Name | <u>Sun & Sand Part 2</u> (1999) DVD |
| Price        | $9.95                            |

|               |                                  |
|---------------|----------------------------------|
| Product Name: | <u>Sun & Sand Part 3</u> (1999) DVD |
| Price         | $9.95                            |

|              |                                  |
|--------------|----------------------------------|
| Product Name | <u>Sun & Sand Part 4</u> (1999) DVD |
| Price        | $9.95                            |

AO 72A
(Rev.8/82)

|                |                                       |
| -------------- | ------------------------------------- |
| Product Name   | <u>Oskar Tetralogy</u> [4-disc] (2011) DVD |
| Price          | $20.95                                |

(Appl. ¶¶ 13-15.)

Customers were able to access descriptions of items available for purchase from the Canadian movie production company at its website. (Appl. ¶ 16.) For example, on February 7, 2011, defendant purchased the movie entitled <u>Crimean Vacation Part 2: Dirty Digs & Silly Splashes</u>. (<u>Id.</u> ¶ 17). The company's website described this movie as follows:

> On the heels of the extremely popular *Crimean Vacation Part I*, we head back to Koktebel with all the boys you've come to love from this exciting series! In Part 2 we check out some of the European beach culture where the Speedo leaves nothing to the imagination. Afterwards you can "*Choose Your Own Adventure*" and either go skinny dipping and play in the mud with Vlad and friends at a popular Ukrainian beach or head to the sauna for a splashing good time with some acrobatic stunts and picture taking!

(<u>Id.</u>)

Similarly on February 7, 2011, defendant bought the movie entitled <u>Sand Buddies</u>. (Appl. ¶ 23.) The company's website described the movie as follows: "A trio of Beach Bums gather for a day on the beach digging holes, skinny dipping and showing their artistic flare with some body paint!" (<u>Id.</u>) Finally, on March 2, 2011,

7

defendant purchased the movie entitled <u>Boys in the Mud</u>, which the website described as follows:

> Boys aren't afraid of a little mud–it's even kinda fun to play in. With their shovel, Tommy and Robin dig a big hole in the garden and Oskar fills it with water. When the mud hole is ready, dams are built and adventurous games with toy cars and cranes are put into action. Best of all is a mud fight. Boys can still have fun and adventures without television.

(Appl. ¶ 25.)

Inspector Adkins, a federal law enforcement officer with extensive experience investigating child pornography matters, reviewed thirteen of the DVD movies that defendant ordered as well as the <u>Azov Buds Portfolio</u> (2010) PHOTOS. (Appl. ¶ 33.) The thirteen DVD movies, <u>Sun and Sand</u> (Parts 1-4), <u>Sand Buddies</u>, <u>The River Escape</u>, <u>FKK Australia</u>, <u>Boys in the Mud</u>, <u>Capital Fellows</u>, <u>Oskar in Two Summers</u>, <u>Vladik & Sanja's Camp Out</u>, <u>Summer in France</u>, and <u>Puppy Dog Tails</u>, are all lengthy movies of boys. (<u>Id.</u>) According to Inspector Adkins, all of the movies focused on boys between the ages of eight and fourteen. (<u>Id.</u>) All of the movies contain footage depicting boys in this age range naked. (<u>Id.</u>) Although there is no sex in the movies, the focus of all of the DVDs is naked young boys, either alone or interacting with other naked young boys. (<u>Id.</u>)

8

More specifically, <u>Puppy Dog Tails</u> depicts two naked boys in several locations. (Appl. ¶ 34.)  In some scenes, the boys are around an indoor swimming pool.  The boys are standing on their hands, upside down, with their naked genitals exposed in various views, and interacting with each other different ways.  (<u>Id.</u>)  Their naked genitals are exposed at length to the camera; the film maker is purposely including their naked genitals and buttocks throughout the movie, because the camera is not focused on their faces or upper bodies.  (<u>Id.</u>)

In <u>Summer in France</u>, two naked boys are depicted in several locations.  (Appl. ¶ 34.)  In some scenes, they are in a small raft, lying beside one another, touching, with their naked genitals exposed.  (<u>Id.</u>)  Their naked genitals are exposed at length.  (<u>Id.</u>)  According to Inspector Adkins, this was consistent in all thirteen DVD movies, with the focus of the footage being on naked young boys with their genitals or buttocks in full view.  (<u>Id.</u>)

The still photos, <u>Azov Buds Portfolio</u> (2010) PHOTOS, are 345 full-size pictures of young boys eight to fourteen years old.  (Appl. ¶ 35.)  The boys are clothed in approximately half of the pictures and naked in the other half.  (<u>Id.</u>)  The boys are not engaged in sex, but can be seen touching one another with an item while naked, such as a naked boy, with his genitals in full view, touching another naked boy's

buttocks with some type of tree limb or similar object.  (Id.)  The boys are also playing the game Twister, while naked, which places them in various poses with their genitals or buttocks clearly depicted.  (Id.)

In March 2012, law enforcement traced the above orders to Mr. Wilson, to his home, and to a post office box in Dallas, Georgia.  (Appl. ¶¶ 36-37.)  Among other information, they discovered that defendant had Internet service through AT&T from November 2006 through mid-March 2012 (the date when the inquiry was made).  (Id. ¶ 36.)  Business records from the Canadian movie production company showed that mailing labels for Joseph Wilson with an address of 160 Mary Lane, Dallas, Georgia 30157 or P.O. Box 400, Winston, Georgia 30187, were produced on or about the next business day for defendant's February 7, 2011, and March 2, 2011 orders, and a digital download was conducted on or about the next business day for defendant's February 23, 2011 order.  (Id. ¶ 37.)  A check with the Georgia Department of Driver Services in March 2012, revealed that Joseph Wilson still resided at 160 Mary Lane in Dallas, Georgia.  (Id. ¶ 38.)  On or about March 9, 2012, representatives of the USPS stated that Joseph Wilson was receiving mail at both 160 Mary Lane, Dallas, Georgia 30157 and P.O. Box 400, Winston, Georgia 30187.  (Id. ¶ 39.)  The P.O. Box application for Box 400 in Winston, GA confirmed that it was registered to Joseph M. Wilson.  (Id.)

A check of open-source information regarding defendant revealed that in March 2012, he was a respite provider for the Georgia Center for Resources and Support for Adoptive Families, an agency that provides support for adoptive parents. (Appl. ¶ 41.) A link from this agency's website showed an address for defendant of 160 Mary Lane, Dallas, Georgia 30132, and that defendant had training/certification as a special education teacher and a background as a child-care worker for a children's home. (<u>Id.</u>) Further investigation showed that Joseph Wilson was a teacher at New Georgia Elementary School in Villa Rica, Georgia. (<u>Id.</u>)

Based on his knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom he had discussions, Inspector Adkins averred that there are certain characteristics common to individuals involved in receipt and attempted receipt of child pornography, which include, <u>inter alia</u>, the following:

> b.      Those who receive and attempt to receive child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Such individuals oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

AO 72A
(Rev.8/82)

c.     Those who receive and attempt to receive child pornography often possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. These individuals typically retain pictures, films, negatives, magazines, correspondence, recordings, mailing lists, child erotica, and videotapes for many years.

d.     Likewise, those who receive and attempt to receive child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the individual's residence, to enable the collector to view the collection, which is valued highly.

(Appl. ¶ 42.)[2]

Based on the foregoing, Inspector Adkins submitted that there was probable cause to believe that evidence, fruits, and instrumentalities of criminal offenses in violation of 18 U.S.C. §§ 2252 and 2252A would be located at defendant's residence (described in Attachment A to the Application as a multi-story dwelling located at 160 Mary Lane in Dallas, Georgia, and including the premises, its curtilage and outbuilding, vehicles, any bathrooms in and on the property for evidence of recent wall

---

[2] Inspector Adkins also provided the Court with background information about computers, digital cameras, and child pornography (see Appl. ¶¶ 43-50), and specifics about the search and seizure of computer systems and other media (id. ¶¶ 51-53).

AO 72A
(Rev.8/82)

repair (for installation or removal of hidden/covert video equipment), and any computer located on, about, or within the property to be searched). (Appl. ¶ 54.) He further requested that the attached warrant be issued authorizing the search and seizure of items listed in Attachment B. (Id. ¶ 55.) That multi-page list of "items to be searched for and seized" included, inter alia, evidence of child pornography and files containing images of child pornography in any form wherever it my be stored or found, including in any computer, books or magazines, or motion pictures. (See Appl., Attach. B.)

Inspector Adkins presented the aforementioned Application and Affidavit for Search Warrant to the undersigned on March 22, 2012. The Court did not review any images from the DVD movies or photo DVD but relied instead on the descriptions that Inspector Adkins provided in his Affidavit. The undersigned placed Inspector Adkins under oath, who swore to the truth of the facts contained in his Affidavit. After Inspector Adkins signed the Application, the undersigned executed the search warrant and provided it to him. According to information contained in the Government's Response, agents executed the search warrant at Mr. Wilson's residence on March 26, 2012, seized a laptop computer, and questioned him. (Gov't Resp. 11-13.) Apparently, none of the aforementioned DVDs were located during the search.

13

## II.    THE INDICTMENT

On July 24, 2012, the grand jury returned a two-count Indictment [1] against Mr. Wilson.  Count One charges that, on or about February 8, 2011, and March 3, 2011, in the Northern District of Georgia, defendant knowingly received one or more visual depictions of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), said depictions having been (a) produced using minors engaging in sexually explicit conduct, and (b) shipped and transported in interstate and foreign commerce, by any means, including by United States mail and by computer, all in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).

Count Two of the Indictment alleges that, beginning on a date unknown to the Grand Jury, but at least by March 26, 2012, in the Northern District of Georgia, defendant knowingly possessed a Dell laptop computer that contained one or more visual depictions of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), said depictions having been (a) produced using minors engaging in sexually explicit conduct, and (b) shipped and transported in interstate and foreign commerce, by any means, including by computer, all in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

14

In sum, Count One arises from defendant's ordering of alleged child pornography from the Canadian movie production company in February-March 2011, while Count Two arises from the defendant's possession of alleged child pornography on his Dell laptop computer, which agents seized on March 26, 2012, when executing the search warrant at his residence.

## III.   LEGAL ANALYSIS

Defendant contends that (1) the search warrant issued here by the undersigned was not supported by probable cause; (2) the only evidence which provided probable cause was stale; (3) the application was overbroad (leading to an overbroad warrant); and (4) <u>Leon</u>'s good-faith exception does not apply.  Mr. Wilson also seeks a <u>Franks</u> hearing, and, under the fruit of the poisonous tree doctrine, asks that the laptop computer obtained in the search of his home be suppressed along with any statements he made.

### A.    **Probable Cause**

Because Defendant's Motions raise issues under the Fourth Amendment, the Court begins with its text, which provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath

or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

As is clear from the text of the Fourth Amendment, probable cause must exist for a search warrant to issue. The Supreme Court defines "probable cause" as a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The determination of whether probable cause exists must be made in light of the "totality of the circumstances." Id.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Id. "Probable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Id. at 241 (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)).

> Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations.

AO 72A
(Rev.8/82)

United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994) (citing Gates, 462 U.S. at 236-37). "[S]o long as the magistrate had a 'substantial basis . . . for conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Gates, 462 U.S. at 236 (second and third alterations in original) (quoting Jones v. United States, 362 U.S. 257, 271 (1960), overruled on other grounds by United States v. Salvucci, 448 U.S. 83 (1980)). Finally, "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." Leon, 468 U.S. at 914.

Mr. Wilson asserts that probable cause was lacking because the images were not submitted to the Court, and because the descriptions that were provided by Inspector Adkins's Affidavit were not sufficient to satisfy the statutory definition of child pornography. The Court considers these contentions in turn.

There is no requirement in this Circuit that a judge reviewing a search warrant application must examine the images reflecting alleged child pornography. See United States v. Smith, 459 F.3d 1276, 1291 n.15 (11th Cir. 2006) ("While it may have been prudent for the magistrate judge to view the photos [of alleged child pornography]

17

independently, we cannot say that, as a matter of law, the court must view the evidence to determine whether probable cause existed."); see also United States v. Rubinstein, No. 09-20611-CR, 2010 WL 2723186, at *7 (S.D. Fla. June 24, 2010) ("In this Circuit there is no requirement that judges who issue search warrants in child pornography cases inspect the alleged pornographic images themselves."). Indeed, a judge may properly issue a warrant based on factual descriptions of an image. See New York v. P.J. Video, Inc., 475 U.S. 868, 874 n.5 (1986) (holding that a reasonably specific affidavit describing the content of a film generally provides an adequate basis for the magistrate judge to determine whether there is probable cause to believe that the film is obscene and whether a warrant authorizing its seizure should issue).

The above cited Smith decision from the Eleventh Circuit is consistent with at least three other Circuits. See United States v. Lowe, 516 F.3d 580, 586 (7th Cir. 2008) ("[A]n issuing court does not need to look at the images described in an affidavit in order to determine whether there is probable cause to believe that they constitute child pornography. A detailed verbal description is sufficient."); see also United States v. Gatherum, 338 F. App'x 271, 274-75 (4th Cir. 2009); United States v. Chrobak, 289

18

F.3d 1043, 1045 (8th Cir. 2002).[3]  At least one Circuit is more lenient, upholding a judge's probable cause determination based only upon an experienced agent's opinion that images are child pornography.  See United States v. Smith, 795 F.2d 841, 848-49 (9th Cir. 1986) (upholding search where a warrant was issued on the basis of the relatively conclusory allegation that the photos depicted "sexually explicit conduct" without the issuing magistrate viewing the photos to make an independent determination).

Given the Eleventh Circuit's decision in Smith and the consistent decisions from the Fourth, Seventh, and Eighth Circuits, the undersigned appropriately relied on Inspector Adkins's descriptions of the images and was not required to review them. The issue then is whether those descriptions were sufficient to establish probable cause.[4]

---

[3] United States v. Brunette, 256 F.3d 14, 19 (1st Cir. 2001), prefers inspection of the images but accepts reasonably specific descriptions.  Although defendant relies on Brunette (see Def.'s Br. 8-9), the case is distinguishable because the investigator's affidavit there did not offer any description of the images; "he merely asserted that they met the statutory definition of child pornography." Brunette, 256 F.3d at 16.  In contrast, as discussed above, in addition to asserting that the images met the statutory definition of child pornography, Inspector Adkins provided a detailed description in his Affidavit of the images that he reviewed.  (See Appl. ¶¶ 33-35.)

[4] Defendant argues that the descriptions of videos and images from the website that Inspector Adkins included in his Affidavit (see Appl. ¶¶ 16-32) are not probative

AO 72A
(Rev.8/82)

As for the DVD movies and DVD photos that Inspector Adkins personally reviewed, he provided extensive detail about what he had seen to the Court. (<u>See</u> Appl. ¶¶ 33-35.) A comparison of his descriptions to the governing statute shows that what defendant ordered and received could be found by a jury to meet the definition of "child pornography," which is

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where–
>
> (A)    the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
>
> (B)    such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
>
> (C)    such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

---

because there is no evidence that Mr. Wilson looked at these videos or images and because nothing in the website's descriptions supports a finding that the videos or images fall within the definition of child pornography. (<u>See</u> Def.'s Br. 10-11.) The Court notes that these descriptions do not purport to describe the actual content of the videos or images, but show instead what a viewer shopping for videos or images would have seen about their content before placing an order. The description of the actual content that Inspector Adkins examined and described to the Court is found in later paragraphs of his Affidavit. (<u>See</u> Appl. ¶¶ 33-35.)

18 U.S.C. § 2256(8).  In turn, the statute defines "sexually explicit conduct" as actual or simulated–

> (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
>
> (ii) bestiality;
>
> (iii) masturbation;
>
> (iv) sadistic or masochistic abuse; or
>
> (v) lascivious exhibition of the genitals or pubic area of any person.

18 U.S.C. § 2256(2)(A).  Given the description of the images found in Inspector Adkins's Affidavit, the governing section is 18 U.S.C. § 2256(2)(A)(v), i.e., the "lascivious exhibition of the genitals or pubic area."

To address the meaning of "lascivious exhibition," courts often apply the multi-factor test that originated in United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir. 1987).  See United States v. Johnson, No. 2:10-CR-71-FtM-36DNF, 2011 WL 2446567, at *5-6 (M.D. Fla. June 15, 2011).  These Dost factors are as follows:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

(2)     whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

(3)     whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

(4)     whether the child is fully or partially clothed, or nude;

(5)     whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

(6)     whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

United States v. Steen, 634 F.3d 822, 826 (5th Cir. 2011) (citing Dost, 636 F. Supp. at 832). These factors are "neither definitive nor exhaustive." United States v. Horn, 187 F.3d 781, 789 (8th Cir. 1999). "Any determination of lasciviousness 'will have to be made based on the overall content of the visual depiction.'" Steen, 634 F.3d at 827 (quoting Dost, 636 F. Supp. at 832); accord United States v. Rubio, 834 F.2d 442, 448 (5th Cir. 1987).

The descriptions of the videos and images in Inspector Adkins's Affidavit satisfy five of the six Dost factors. The first factor is concerned with whether the pubic area is accented by the depiction. Steen, 634 F.3d at 827.[5] Courts consider whether

---

[5] Defendant cites Steen to support the argument that the film maker's purpose here should be construed as voyeurism. (Def.'s Br. 14.) However, this case is unlike Steen, where a man was video-taping a minor woman in a tanning bed; the court found

the focal point of the visual depiction is on the minor's genitals or pubic area.  Id.; see also United States v. Rivera, 546 F.3d 245, 250 (2d Cir. 2008) ("[T]he images all show David lying naked on a hotel room bed, his genitals prominent at or about the center of the frame.").  The Affidavit here states that, with regard to Puppy Dog Tails, the boys' "naked genitals [are] exposed in various ways." (Appl. ¶ 34.)  Additionally, it is clear from Inspector Adkins's descriptions that boys' genitals are the focal point of the videos as "[t]heir naked genitals are exposed at length to the camera; the film maker is purposely including their naked genitals and buttocks throughout the movie," and "the camera is not focused on their faces or upper bodies." (Id.)  The fact that the boys' genitals are exposed for extended periods of time and the camera is often not focused on their faces or upper bodies is sufficient to support a finding that the focal point of the images and videos was on the genital or pubic region of the boys, thus satisfying the first Dost factor.

The description of the images and videos in Inspector Adkins's Affidavit is sufficient to support a finding that the boys were in unnatural poses or attire (i.e., the third Dost factor).  This factor turns on whether one would expect children of a given

_____

that just because the minor was nude and secretly videotaped was not enough to support a finding that the depiction was child pornography.  634 F.3d at 827-28.  In this case, however, the boys were not simply nude; the depictions often focused on their pubic areas and showed the boys touching one another while naked with both their hands and tree limbs.

age to be posed or dressed the way they are in the visual depiction.  See Dost, 636 F. Supp. at 833 (holding that the pose of a naked ten-year-old girl on the beach was unnatural because it is not one that a child would ordinarily assume without adult coaching); United States v. Larkin, 629 F.3d 177, 183 (3d Cir. 2010) (the pose of a young naked girl in a shower with her head resting on shrugged shoulders was considered unnatural because it was not what one would expect to see a young girl doing, but instead appeared to be at the direction of the photographer).  The Affidavit states that Summer in France includes naked boys depicted in several locations, such as "lying beside one another, touching, with their naked genitals exposed," often "at length."  (See Appl. ¶ 34.)  According to Inspector Adkins, this type of thing is consistent in all thirteen movies, with the focus being on naked young boys with their genitals or buttocks in full view.  (Id.)  With regard to the DVD photos, Inspector Adkins avers that boys are seen touching one another with an item while naked, "such as a naked boy, with his genitals in full view, touching another naked boy's buttocks with some type of tree limb or similar object."  (Id. ¶ 35.)  Images in the DVD photos also show the boys "playing the game Twister, while naked."  (Id.)  This conduct and these poses are not things that boys naturally do while naked without adult direction. The description provided by Inspector Adkins thus supports a finding that the boys were in an unnatural pose or attire.

AO 72A
(Rev.8/82)

The description of the videos in the Affidavit is sufficient to support a finding that the boys were nude (i.e., the fourth <u>Dost</u> factor).  Inspector Adkins avers that all thirteen of the movies contain footage of "naked young boys with their genitals or buttocks in full view."  (<u>See</u> Appl. ¶ 34.)  Defendant argues that mere nudity is not enough to create a finding of lasciviousness, citing <u>United States v. McKelvey</u>, 203 F.3d 66 (lst Cir. 2000), and argues that the videos are "naturalist videos and photos." (Def.'s Br. 13.)  However, the photographs the <u>McKelvey</u> court found to fall short of the legal definition of child pornography were of "young boys 'skinnydipping.'" <u>McKelvey</u>, 203 F.3d at 69 n.3.  Although that activity is not something which merits capturing on film, it is far less sexually suggestive and pornographic than images focusing on boys' genitalia and showing them touching each other with hands and objects like tree limbs or playing Twister naked.

The description of the videos and images in Inspector Adkins's Affidavit is sufficient to support a finding that the depictions suggest a sexual coyness or a willingness to engage in sexual activity (i.e., the fifth <u>Dost</u> factor).  Courts have held that the absence of a sexual come on does not mean a picture is not lascivious, as children do not normally have expressions that invite sexual activity, and the statute does not presume that they do.  <u>United States v. Frabizio</u>, 459 F.3d 80, 89 (1st Cir. 2006).  A child could be coaxed to assume poses or act in ways that would evoke

25

sexual availability when viewed by certain adults, creating a depiction that suggests sexual coyness or a willingness to engage in sexual activity, regardless of the child's own characteristics. See Rivera, 546 F.3d at 251; see also United States v. Wolf, 890 F.2d 241, 245 (10th Cir. 1989). The Affidavit here states that the boys in the videos are "lying beside one another, touching, with their naked genitals exposed" (see Appl. ¶ 34), while some images in the DVD photos show naked boys touching one another with their hands or with tree limbs. (Id. ¶ 35.) The fact that the boys are touching one another while naked is highly suggestive that they have a willingness to engage in sexual activity. These actions could also evoke the idea of sexual availability in some adults.

Finally, the "sixth factor is the most difficult to apply—whether the visual depiction is intended or designed to elicit a sexual response in the viewer." Steen, 634 F.3d at 827-28. "In other words, '[t]he final Dost factor simply puts again the underlying question: Is the exhibition lascivious?'" United States v. Hill, 322 F. Supp. 2d 1081, 1086 (C.D. Cal. 2004) (quoting Doe v. Chamberlin, 299 F.3d 192, 196 (3d Cir. 2002)), aff'd, 459 F.3d 966 (9th Cir. 2006). "This factor has no independent force." Hill, 322 F. Supp. 2d at 1086. Here, the boys are often naked in these videos or photos, touching each other's buttocks with hands or tree branches, playing Twister naked, and lying beside each other naked. Moreover, these poses are unnatural and the

26

boys' genitals are prominently featured. It appears that the images had no purpose other than to elicit a sexual response in the viewer, thus meeting the sixth <u>Dost</u> factor.

That five of the six <u>Dost</u> factors have been met here supports the finding that probable cause existed to issue the search warrant. However, even if most of the <u>Dost</u> factors had not been satisfied, there is a significant difference between <u>Dost</u> and this matter which would still counsel in favor of issuing the search warrant. Specifically, the district judge in <u>Dost</u> had tried that case on stipulated facts and reviewed the images in question. <u>Dost</u>, 636 F. Supp. at 830. In writing the opinion, he developed six factors a trier of fact should examine to assist in the determination of whether a visual depiction of a minor constitutes a lascivious exhibition of the genitals or pubic area. <u>Id.</u> at 832.

In contrast, the instant case is not yet at the trial stage, where the Government must prove lasciviousness beyond a reasonable doubt. Instead, this Court is being asked to determine whether probable cause existed for issuance of a search warrant based on averments in Inspector Adkins's Affidavit. The undersigned thus concurs with the following analysis:

> A close look at the *Dost* factors persuades the court that the test is not particularly helpful. It is indeterminate even for a court that has pictures to analyze, and almost entirely useless to a magistrate asked to evaluate pictures he has never seen. The Ninth Circuit, too, has been skeptical of *Dost*, noting that "[t]he standard employed by the district

27

court [in <u>Dost</u>] was over-generous to the defendant in implying as to the 17-year-old girl that the pictures would not be lascivious unless they showed sexual activity or willingness to engage in it." <u>Wiegand</u>, 812 F.2d at 1244. The court therefore adopts a different test, one that it believes better comports with the child pornography statute and provides more meaningful guidance in evaluating lasciviousness: If an image of a minor displays the minor's naked genital area, there is probable cause to believe that the image is lascivious unless there are strong indicators that it is *not* lascivious.

<u>Hill</u>, 322 F. Supp. 2d at 1086-87 (footnotes omitted).

Thus, while the trier of fact reviews actual images to determine lasciviousness, judges evaluating probable cause must work with probabilities, often without access to the images. <u>Hill</u>, 322 F. Supp. 2d at 1087 n.9. "There is at least probable cause to conclude an image is lascivious when it exhibits a minor's bare genitalia, and weak or ambiguous indicators of an innocent purpose do not suggest otherwise." <u>Id.</u> In this case, the movies and photos at issue exhibited genitalia of young boys. Moreover, there were no indicators of innocent purpose. The pictures are not part of a medical text. They do not appear to be bona fide artistic expression, nor do they depict a family setting where exposure of the genitals was incident to an innocuous activity such as swimming or horseplay. As described by Inspector Adkins, the boys in the videos and photos were filmed/photographed for the apparent purpose of displaying their genitals to the viewer.

28

To determine whether probable cause existed, the undersigned had to "make 'a practical, commonsense decision whether, given all the circumstances set forth in the affidavit,' there [was] a fair probability that evidence of a crime [would] be found in a particular place." Wiegand, 812 F.2d at 1242 (citing Gates, 462 U.S. at 238). The Court had before it an Affidavit describing movies and photos of naked boys that often focused on their genitalia, and which captured them engaged in unusual activities while naked (such as touching each other with tree limbs and playing Twister). This raised a presumption that the images were lascivious, and nothing indicated that the images were made or viewed for an innocent purpose. Therefore, the undersigned had a substantial basis for concluding that there was probable cause for issuance of a warrant authorizing the search of defendant's home and seizure of evidence of child pornography. See Gates, 462 U.S. at 238-39; see also Hill, 322 F. Supp. 2d at 1087.

**B.**     **Staleness**

Defendant next argues that, because agents executed the search warrant over one year after he placed his last order with the Canadian movie production company, the warrant fails on staleness grounds. (Def.'s Br. 21-22.) The Court disagrees.

To satisfy the Fourth Amendment's probable cause standard, the Government "must reveal facts that make it likely that the items being sought are in that place when

29

the warrant issues." United States v. Domme, 753 F.2d 950, 953 (11th Cir. 1985), modified on other grounds, United States v. Dennis, 786 F.2d 1029 (11th Cir. 1986). The information supporting the Government's application for a search warrant must be timely, for probable cause must exist when the magistrate judge issues the search warrant. United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994) (citing Sgro v. United States, 287 U.S. 206, 210 (1932)). Warrant applications based upon stale information fail to create probable cause that similar or other improper conduct is continuing. United States v. Bascaro, 742 F.2d 1335, 1345 (11th Cir. 1984), abrogated on other grounds by United States v. Lewis, 492 F.3d 1219 (11th Cir. 2007).

When reviewing staleness challenges, the Eleventh Circuit has directed that courts should not "apply some talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate[;] rather, [they] review each case based on the unique facts presented." Harris, 20 F.3d at 450. In this case-by-case determination, a court may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched. Id.; see also United States v. Lamb, 945 F. Supp. 441, 459-60 (N.D.N.Y. 1996) (when determining whether information is stale, judicial officer must not only consider the age of the information, but also the nature of the evidence sought, as "[t]he hare and

30

the tortoise do not disappear at the same rate of speed." (alteration in original) (internal quotation marks omitted)).

Courts in child pornography cases allow relatively long periods of time to elapse between the date information is received about a defendant's allegedly illegal activity and the issuance of a search warrant. For example, in <u>United States v. Morales-Aldahondo</u>, 524 F.3d 115 (1st Cir. 2008), the court held that a three-year lapse between the defendant's purchase of child pornography and the warrant application did not render the information stale. <u>Id.</u> at 119. The First Circuit noted the considerable evidence in the warrant application demonstrating that customers of child pornography sites do not quickly dispose of their cache. <u>Id.</u> Additionally, in <u>United States v. Irving</u>, 452 F.3d 110 (2d Cir. 2006), court found that information in an affidavit dated two years before the warrant's execution was not stale. <u>Id.</u> at 125. According to the Second Circuit, "When a defendant is suspected of possessing child pornography, the staleness determination is unique because it is well known that 'images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes.'" <u>Id.</u> (quoting <u>Lamb</u>, 945 F. Supp. at 460).[6] Finally, the court

---

[6] The warrant application here contains similar evidence about the practices of possessors of child pornography. (<u>See</u> Appl. ¶ 42.) Although Mr. Wilson does not challenge Inspector Adkins's averments about child molesters, pedophiles, or collectors of child pornography, he asserts that the agent laid no foundation to show that he (Wilson) was one of them. (Def.'s Br. 20.) The characteristics of these types

in <u>United States v. Lemon</u>, 590 F.3d 612 (8th Cir. 2010), held that information showing that the defendant had traded child pornography approximately eighteen months before the warrant issued was not stale. <u>Id.</u> at 614-15.[7]

Cases from this Circuit are in accord with the above holdings. <u>See</u> <u>United States v. McBurnette</u>, 382 F. App'x 813, 815 (11th Cir. 2010) (per curiam) (period of almost two years did not render information stale); <u>United States v. Schwinn</u>, 376 F. App'x 974, 979 (11th Cir. 2010) (per curiam) (period of ten months did not render information stale); <u>United States v. Toups</u>, No. 2:06-CR-112-MEF, 2007 WL 433562, at *4 (M.D. Ala. Feb. 6, 2007) (information relating to internet child pornography from two years before the agent applied for search warrant was not stale). Given the above

of persons are general and did not need to be made specific to Mr. Wilson. However, the Affidavit shows that Mr. Wilson purchased over time numerous movies and photos (valued at almost $2,500) containing probable child pornography from a Canadian movie production company. This is sufficient "to provide a foundation for evidence regarding the practices of possessors of such pornography." <u>United States v. Lacy</u>, 119 F.3d 742, 746 n.6 (9th Cir. 1997). Moreover, it was reasonable for the undersigned to rely on Inspector Adkins's Affidavit and conclude that there was a fair probability that Mr. Wilson maintained a collection in his home of the materials described therein. <u>See</u> <u>United States v. Pappas</u>, 592 F.3d 799, 804 (7th Cir. 2010) ("[W]here evidence indicates that an individual has uploaded or possessed multiple pieces of child pornography, there is enough of a connection to the 'collector' profile to justify including the child pornography boilerplate in a search warrant.").

[7] There are even more extreme examples in child pornography cases. <u>See</u> <u>e.g.</u>, <u>United States v. Riccardi</u>, 405 F.3d 852, 860-61 (10th Cir. 2005) (five years); <u>United States v. Prideaux-Wentz</u>, 543 F.3d 954, 958-59 (7th Cir. 2008) (declining to hold that evidence two to four years old is stale as a matter of law).

cases, and the evidence demonstrating that customers of child pornography sites do not

quickly dispose of their cache, the lapse of about one year from Mr. Wilson's last order

until the issuance of the search warrant here did not render the information stale.

## C. __Overbreadth__

Defendant next asserts that, because the alleged DVD orders are the only

evidence to establish probable cause, the search warrant was fatally overbroad. (Def.'s

Br. 23.) He argues that the long list of boilerplate items to be searched was in no way

connected to the DVD orders, and gave Inspector Adkins the unconstitutional

opportunity to engage in a general search of items unrelated to the DVD orders. (Id.)

Mr. Wilson further contends that Inspector Adkins's failure to find child pornography

during his search demonstrates that the warrant was overbroad. (Id. at 24.) Moreover,

despite nothing in the warrant which allowed it, Inspector Adkins seized a laptop

computer and searched its unallocated space.[8] (Id.) Because law enforcement

---

[8] "'Unallocated space is space on a hard drive that contains deleted data, usually emptied from the operating system's trash or recycle bin folder, that cannot be seen or accessed by the user without the use of forensic software.'" United States v. Pruitt, 638 F.3d 763, 765 n.2 (11th Cir. 2011) (per curiam) (quoting United States v. Flyer, 633 F.3d 911, 918 (9th Cir. 2011)).

33

apparently located alleged child pornography in the laptop (see Indict., Count Two),

defendant seeks to suppress the images found therein.[9]

The Fourth Amendment's particularity "requirement is aimed at preventing 'general, exploratory rummaging in a person's belongings.'" United States v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir. 1982) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)).  A warrant which fails sufficiently to particularize the place to be searched or the things to be seized is unconstitutionally overbroad and the resulting general search is unconstitutional. See Stanford v. Texas, 379 U.S. 476, 485-86 (1965).  A description is sufficiently particular when it enables the searcher reasonably to ascertain and identify the things to be seized. See United States v. Santarelli, 778 F.2d 609, 614 (11th Cir. 1985).

Defendant's argument that there was no probable cause for the seizure of his laptop computer fails for several reasons.  First, Inspector Adkins, an experienced federal agent, averred that individuals, such as defendant, who obtain and collect child pornography often keep it on a home computer.  (Appl. ¶ 42.).  Second, his Affidavit states that on February 23, 2011, defendant ordered a digital download of hundreds of

---

[9] Without any citation to the record or case law, defendant asserts that agents could not search his laptop computer because it was not the same one that he owned during the time he allegedly ordered the offending DVDs. (Def.'s Br. 24.) The Court disregards this unsupported contention.

34

images of alleged child pornography, which requires a computer to download. (Id. ¶¶ 14, 37, 46-47.) Third, defendant ordered the child pornography online and provided an email address for each order, showing that he had a computer and that it was linked to alleged criminal activity. In sum, Inspector Adkins's Affidavit supports the proposition that Mr. Wilson had an internet-connected computer, that he used it to order child pornography, and that he downloaded child pornography to it.[10]

The search warrant here particularized the place to be searched. (See Appl., Attach. A ("Description of the Premises to be Searched").) It also particularized the things to be seized. (Id., Attach. B ("Items to be Searched for and Seized").)

---

[10] The following excerpt has relevance here:

Although the undersigned concludes that there was probable cause to believe that there was a computer at the residence, this issue is something of a red herring. The real issue for determining the validity of the warrant is whether there was probable cause to search Defendant's residence for evidence of child prostitution and/or child pornography, and whether such a search would include any computers found therein. The issue is not whether there was probable cause to believe there was a computer at the house, or any other particular box, drawer, cabinet or receptacle in which evidence might be contained, assuming there has been a showing of probable cause to search the residence.

United States v. Skow, No. 1:11-CR-373-CAP-ECS, 2012 WL 4514282, at *5 (N.D. Ga. Sept. 13, 2012) (citations omitted), report and recommendation adopted by 2012 WL 4511336 (N.D. Ga. Oct. 1, 2012). The same holds true here.

AO 72A
(Rev.8/82)

Defendant challenges the seizure of the laptop computer, but the warrant clearly

authorized the seizure of the following:

> Evidence of images of child pornography and files containing images of
> child pornography in any form wherever it may be stored or found,
> including (i) any computer, computer system . . . any electronic data
> storage devices including, but not limited to hardware, software, and
> other storage mediums . . . related to or used to:  visually depict child
> pornography; contain information pertaining to the interest in child
> pornography; and/or distribute, receive, attempt to receive, or possess
> child pornography."

(Id.)

The search warrant here, like the ones upheld in United States v. Hall, 142 F.3d

988, 996-97 (7th Cir. 1998), was "written with sufficient particularity because the

items listed on the warrants were qualified by phrases that emphasized that the items

sought were those related to child pornography."  Law enforcement officers executing

the warrant were not unguided and free to rummage through Mr. Wilson's property.

See Andresen v. Maryland, 427 U.S. 463, 480 (1976).  Instead, they could search for

evidence of child pornography only in certain specified places, such as computers,

books, magazines, photographs, videos, etc.  See United States v. Lebowitz, 647 F.

Supp. 2d 1336, 1352 (N.D. Ga. 2009) (affidavit in support of warrant authorizing

search of defendant's residence for evidence of pornographic materials, computers,

computer programs, external storage units, cameras and video equipment, catalogs and

36

periodicals, and "any items commonly found in child pornography cases," among other things, was not unconstitutionally overbroad).

The undersigned's review of the warrant and Affidavit here is consistent with the reasoning of the court quoted below:

> After reviewing the warrant and affidavit in this case and the applicable case law, the court is satisfied that the warrant is not overbroad. The search and seizure authorized by the warrant is within the ambit of probable cause established by the affidavit, which was limited by its preface to images of child pornography and files containing images of child pornography, and the affidavit itself raised a fair probability that evidence of such a crime would be found at defendant's residence. Moreover, the search of the seized computer hardware as authorized by the warrant was reasonably likely to yield evidence of a crime. Indeed, the equipment authorized to be seized all could have revealed evidence of a crime and a search of all of that equipment was the only practical way to determine if evidence of child pornography would be found.

United States v. Bogle, Crim. No. 08-335, 2009 WL 1064473, at *5 (W.D. Pa. Apr. 20, 2009).

Defendant cites no case law supporting his contention that, if an initial preview of a computer does not reveal child pornography, then agents should abandon the search and not review its unallocated space. The search warrant application here explains the limitations faced by agents when searching a computer on scene and recommends that a computer suspected of containing contraband be seized and taken to a laboratory or other controlled environment for review by a qualified computer

37

expert.  (See Appl. ¶¶ 51-53.)  Moreover, the search warrant here permitted a search

of the unallocated space on the laptop because it authorized search of "files containing

images of child pornography in any form, wherever it may be stored or found."  (Id.,

Attach. B.)  As "'long as the computer search is limited to a search for evidence

explicitly authorized in the warrant, it is reasonable for the executing officers to open

the various types of files located in the computer's hard drive in order to determine

whether they contain such evidence.'"  United States v. Richards, 659 F.3d 527, 540

(6th Cir. 2011) (quoting United States v. Roberts, No. 3:08-CR-175, 2010 WL 234719,

at *15 (E.D. Tenn. Jan. 14, 2010) (upholding a warrant authorizing the search of,

among other things, all of the unallocated space of an entire server that hosted the

defendant's web sites, which the FBI believed contained child pornography)).  Because

unallocated space is a location where evidence of current or prior possession and

receipt of child pornography can be found, it was proper for that space to be searched.[11]

### D.    Good-Faith Exception

Defendant contends that the good-faith exception has no application here because of the purported failures of Inspector Adkins in drafting his Affidavit and in failing to provide the images he described to the undersigned. (Def.'s Br. 24-27.)  The Supreme Court held in Leon that the exclusionary rule adopted pursuant to the Fourth Amendment should not be applied to bar the use in the prosecutor's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued

---

[11] Numerous cases have found warrants similar to the one issued here to be sufficiently particularized and upheld them against overbreath attacks.  See United States v. Campos, 221 F.3d 1143, 1147-48 (10th Cir. 2000) (holding that a warrant authorizing the seizure of computer equipment related to child pornography was not unconstitutionally overbroad); Lacy, 119 F.3d at 746 (upholding warrant authorizing search of the defendant's entire computer system, noting that "[t]he government knew that [the defendant] had downloaded computerized visual depictions of child pornography, but did not know whether the images were stored on the hard drive or on one or more of his many computer disks," and that a customs agent had supplied an affidavit stating that "there was no way to specify what hardware and software had to be seized to retrieve the images accurately"); United States v. Kimbrough, 69 F.3d 723, 727 (5th Cir. 1995) (holding that a search warrant authorizing seizure of, inter alia, computer disks, hard drives, printers, and computer-related operational equipment reflecting evidence of child pornography was sufficiently specific); United States v. Layne, 43 F.3d 127, 132-33 (5th Cir. 1995) (holding that a warrant seeking "Child pornography; records of victims; drawings; pictures; computer disks; sexual devices; videotapes; child abuse books; magazines; audio tapes; and any other obscene or child pornographic material" was sufficiently particular).

AO 72A
(Rev.8/82)

by a neutral and detached magistrate but ultimately found to be invalid. <u>Leon</u>, 468 U.S. at 925-26. Some background on that case is necessary to understand its holding and to apply it here.

The defendants in <u>Leon</u> sought to suppress the fruits of searches performed under a warrant issued by a state superior court judge. A federal district court granted a motion to suppress after determining that the search warrant was not supported by probable cause because the information contained in the supporting affidavit was stale and the credibility of an informant who provided information placed in the affidavit was not established. 468 U.S. at 902-04. After the Ninth Circuit affirmed the suppression, the Supreme Court reviewed the decision on certiorari and accepted the lower court's conclusion that probable cause was lacking. <u>Id.</u> at 905.

The Court noted that the exclusionary rule is a judicially created remedy to safeguard Fourth Amendment rights through its deterrent effect. <u>Leon</u>, 468 U.S. at 906. Because application of the rule exacts substantial costs, particularly where law enforcement acted in objective good faith, the Court stated that its application should be limited to those areas where its remedial objectives are efficaciously served. <u>Id.</u> at 908. Although the Court concluded that the exclusionary rule would continue to be applied when a Fourth Amendment violation was substantial and deliberate, a balancing approach developed in recent cases suggested that the rule should be

40

modified to permit the introduction of evidence obtained in a reasonable, good-faith belief that a search or seizure was in accord with the Fourth Amendment. Id. at 909.

The Court repeated its preference for warrants and declared that, in a doubtful case, a search under a warrant may be sustainable when without one it would fail. Leon, 468 U.S. at 914. Although "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, . . . we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." Id. The Court stated, however, that such deference is not boundless. Id. First, deference does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was made. Id. Second, reviewing courts must insist that the magistrate perform his task in a neutral and detached manner and not merely serve as a rubber stamp for the police. Id. Third, the affidavit provided to the magistrate must provide a "substantial basis" for determining the existence of probable cause. Id. at 915. Sufficient information must be provided to the magistrate to allow him or her to determine probable cause; in other words, "bare bones" affidavits are not permitted. Id. There can be no mere ratification of the bare conclusions of others. Id. Notwithstanding the deference accorded the magistrate's determination, a warrant may be invalidated if his

41

probable cause determination "reflect[s] an improper analysis of the totality of the circumstances" or if the form of the warrant was improper in some respect.  Id.

The Court noted that only in the first of the three situations listed above had it articulated a rationale for suppressing evidence obtained pursuant to a search warrant.  Leon, 468 U.S. at 915.  In the other situations, it had excluded evidence without considering whether Fourth Amendment interests would be advanced.  Id. at 915-16.  However, the Court rejected the idea that application of the exclusionary rule would affect the decisions of magistrates and judges.  Id. at 916.  This is because the "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."  Id.  There was no evidence that judicial officers were inclined to ignore or subvert the Fourth Amendment, and no reason to believe that excluding evidence seized pursuant to warrant would have a significant deterrent effect on them.  Id.

If exclusion of evidence obtained pursuant to a subsequently invalidated warrant was to have any deterrent effect, the Court believed that it had to alter the behavior of individual law enforcement officers.  Leon, 468 U.S. at 918.  But, suppression should be ordered "only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."  Id.  Observing that the purpose of the exclusionary rule is to deter unlawful police conduct, the Court found that this purpose would not be

42

served, and the rule should not be applied, when officers engage in "objectively reasonable law enforcement activity." Id. at 918-19. In particular, the Court held that the suppression of evidence would have no deterrent effect "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Id. at 920. In such situations, the Court stated as follows:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

Id. at 921 (alteration in original) (citation omitted).

The Court thus concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Leon, 468 U.S. at 922. The Court stated, however, that exclusion might still be possible even though an officer obtained a warrant and abided by its terms, although it added immediately thereafter the following statements:

> "[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness," for "a warrant issued by a magistrate normally suffices

43

to establish" that a law enforcement officer has "acted in good faith in conducting the search." Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable,[12] and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.

Id. at 922-23 (alteration in original) (citations and footnotes omitted).

The Court then summarized four situations where the officer would have no reasonable grounds for believing that the warrant was properly issued and where suppression would be an appropriate remedy:

(1)     Where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.

(2)     Where the issuing magistrate wholly abandoned his judicial role.

(3)     Where the search warrant is based on an affidavit that is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

(4)     Where, depending on the circumstances of the particular case, a warrant may be so facially deficient–i.e., in failing to particularize the place to be searched or the things to be seized–that the executing officers cannot reasonably presume it to be valid.

Leon, 468 U.S. at 923.

_____

[12] At this point, the Court elaborated on the above-quoted text in a footnote, adding that "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

AO 72A
(Rev.8/82)

The Court concluded that, having reexamined the purposes of the exclusionary rule and the propriety of its application in cases where officers have relied on a subsequently invalidated search warrant, "the rule's purposes will only rarely be served by applying it in such circumstances." Leon, 468 U.S. at 926. The Court then applied the above-cited four factors to the facts of the case before it. There was no contention that the state superior court judge was misled by false information in an affidavit (factor 1), that he abandoned his detached and neutral role (factor 2), or that the warrant was facially deficient (factor 4). Id. One defendant argued, however, that the search warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable (factor 3). Id. (As noted above, information in the affidavit was stale and the reliability of the informant had not been established.)

The Court rejected the defendant's argument that no reasonably well-trained police officer could have believed that probable cause existed to search his house. The warrant application was supported by more than a "bare bones" affidavit that related the results of an extensive investigation. Leon, 468 U.S. at 926. According to the Court: "Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion [was] inappropriate." Id. Therefore, the Ninth Circuit's

45

decision suppressing the evidence seized pursuant to the warrants was reversed.  Id.

In United States v. Young, 229 F. Supp. 2d 1325 (M.D. Ala. 2002), the court summarized Leon as follows:

> [T]he exclusionary rule accomplishes its deterrent effect when it encourages law enforcement officers to comply with the strictures of the Fourth Amendment and seek a search warrant prior to searching a person's house, papers, or effects.  Once the law enforcement officer has the magistrate or judge's determination that probable cause for a search does exist, Leon teaches that the magistrate's error in wrongfully determining that probable cause exists is not to be visited upon the officer by suppressing evidence seized in the search.

Id. at 1328-29 (citation omitted).

In applying Leon to the facts of this case, there is no contention that factors one, two, or four apply.  However, defendant points to factor three and argues that Inspector Adkins's Affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.  (Def.'s Br. 26.)  In United States v. Martin, 297 F.3d 1308 (11th Cir. 2002), the court explained that, in evaluating Leon's third factor, the court does not "determine whether there was sufficient probable cause to justify the search," but instead determines whether the officer's reliance on the search warrant was entirely unreasonable.  Id. at 1315; see also United States v. Taxacher, 902 F.2d 867, 872 (11th Cir. 1990) ("If a reasonable jurist could believe in

46

objective good faith that there was probable cause [to issue a search warrant], obviously a reasonably well-trained officer could believe likewise.").

This "entirely unreasonable" standard is a very high one. The undersigned obviously believed that probable cause existed by signing the search warrant (and has reaffirmed that view <u>supra</u>). The search warrant application was supported by more than a "bare bones" affidavit. Indeed, Inspector Adkins's Affidavit related the results of a long and extensive investigation and described the images depicting alleged child pornography with great detail. Under these circumstances, law enforcement's reliance on the undersigned's determination of probable cause was objectively reasonable, and application of the extreme sanction of suppression of the evidence found during execution of the search warrant would be inappropriate. <u>See</u> <u>Leon</u>, 468 U.S. at 926. Moreover, the searching officers acted reasonably because, as the Court noted in <u>Leon</u>, searches "pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." <u>Id.</u> at 922-23 (citation and internal quotation marks omitted).

Finally, long-standing authority from the Rome Division of this District supports the conclusion that the evidence at issue here should not be suppressed even if the undersigned erred in finding the existence of probable cause. <u>See</u> <u>United States v.</u>

47

Graham, 998 F. Supp. 1460, 1465 (N.D. Ga. 1997) (Murphy, J.) ("While the Court is not prepared to conclude that this affidavit actually establishes probable cause to search Class Car Connection, the Court finds the affidavit is not so devoid of information supporting probable cause that [the officer's] belief that the affidavit established probable cause is 'entirely unreasonable.'"), aff'd mem., 182 F.3d 937 (11th Cir. 1999) (unpublished table decision); United States v. Smith, No. 4:96-CR-15-HLM, 1996 WL 735569, at *6 (N.D. Ga. Aug. 27, 1996) (Murphy, J.) ("The police officers in this case reasonably acted in good faith on the warrant that had been issued by the magistrate judge. Therefore the underlying deficiencies in the warrant alleged by Defendant are inconsequential to the admissibility of the evidence."). Accordingly, Leon applies.

### E. No *Franks* Hearing is Warranted

In Franks v. Delaware, the Supreme Court held that there is a "presumption of validity with respect to the affidavit supporting the search warrant." 438 U.S. at 171. However, where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit, and if the allegedly false statement was necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request to determine admissibility of the fruits of

48

the search.  Id. at 171-72; see also United States v. Aisenberg, 358 F.3d 1327, 1333 (11th Cir. 2004).

Franks also applies when the "misinformation" involves omissions from the affidavit "'made intentionally or with a reckless disregard for the accuracy of the affidavit.'"  Madiwale v. Savaiko, 117 F.3d 1321, 1326-27 (11th Cir. 1997) (quoting United States v. Martin, 615 F.2d 318, 329 (5th Cir. 1980)[13]).  However, "[o]missions that are not reckless, but are instead negligent or insignificant and immaterial, will not invalidate a warrant.  Indeed, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause."  Id. at 1327 (citations omitted).  To mandate a Franks evidentiary hearing,

> the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient.  The deliberate falsity or reckless disregard whose impeachment is permitted . . .  is only that of the affiant, not of any nongovernmental

---

[13] All cases from the former Fifth Circuit handed down by the close of business on September 30, 1981, are binding in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

AO 72A
(Rev.8/82)

informant.  Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.  On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.  Whether he will prevail at that hearing is, of course, another issue.

Franks, 438 U.S. at 171-72.

The burden is upon the defendant to show that, absent misrepresentations or omissions, the warrant lacks probable cause.  United States v. Novaton, 271 F.3d 968, 986-87 (11th Cir. 2001).  Finally, the "substantial preliminary showing" requirement is not lightly met.  A defendant is only entitled to an evidentiary hearing after he makes an offer of proof showing that the affidavit contains a deliberate falsehood or material omission and that it was essential to the finding of probable cause.  United States v. Arbolaez, 450 F.3d 1283, 1293 (11th Cir. 2006) (per curiam).

Defendant's motions fall well short of carrying his burden to show that there was any misrepresentation or omission in the Affidavit supporting the search warrant.  Indeed his motions merely contend that the Affiant should have been more specific about the pornographic nature of the images.  But defendant's disagreement with the undersigned's judgment that Inspector Adkins's Affidavit provided sufficient detail to support issuance of a search warrant for 160 Mary Lane does not constitute a

50

misrepresentation or omission by the Affiant. Therefore, a <u>Franks</u> hearing is not justified.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the undersigned **RECOMMENDS** that Defendant's Preliminary Motion to Suppress Evidence [20] and his Particularized Motion to Suppress Evidence [29] be **DENIED**.

**SO RECOMMENDED,** this 28th day of November, 2012.


_Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)