IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiffs, | : | 4:12-CR-00023-RLV |
| | : | |
| vs. | : | |
| | : | |
| JOSEPH MONROE WILSON, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATIONS (DOC. 61)

The Magistrate's Report and Recommendation in the above styled matter is clearly erroneous in its factual findings and its conclusions of law as are the Magistrate's earlier orders denying Defendant's Third Bill of Particulars and a defense motion entitled "Motion for the Government to Allow Court to Determine Whether DVDs Should be Turned Over to Defendant" (Doc. 52).

On March 25, 2013 United States Magistrate Judge Johnson issued his second Report and Recommendation in this matter (Doc.61). The first report, issued on November 28, 2012 recommended that Defendant Wilson Motion to Suppress Evidence be denied (Doc. 41). The latest report and recommendation

1

covers Defendant's Motion to Suppress Statements (Doc 19).   Defendant Wilson is also objecting to two other matters that were not included in either of the Magistrate's Report and Recommendation, to wit, the denial of Mr. Wilson's Third Bill of Particulars (Doc. 36) and a request that the Magistrate examine the videos to see if they could be turned over because they do not meet the definition of contraband. (Doc. 52)

## THE MAGISTRATE ABUSED HIS DISCRETION IN DENYING DEFENDANT'S REQUEST FOR A THIRD BILL OF PARTICULARS

The Magistrate's denied Defendant Wilson's request for a Third Bill of Particulars (Doc. 32 and 36)   In doing so the Magistrate states that the government has provided discovery to the Defendant.  By "provided discovery to the Defendant," the Magistrate apparently means that the government has made available at the United States Postal Service Headquarters in Atlanta thumbnails of sixty (60) thumb nail images which the government claims contain images of child pornography found in the unallocated space of the Defendant's computer. Additionally, the discovery "provided" as referenced by the Magistrate includes numerous DVDs which the Defendant's attorneys can watch in real-time at six (6) hours per session and endeavor to figure out which images or segments of the films the government may someday argue constitute lewd and lascivious representation of children under the charged statutes in the indictment.

As has been argued endlessly by defense counsel in this case, it is impossible to ascertain which thumbnails from the unallocated space on the Defendant's hard drive constitute children for purposes of the child pornography statute. Defendant challenges and disputes the allegation that any are images of children. Yet the government has failed to designate any of the images as children in the 60 plus images from the unallocated space. Additionally, as the Defendant has previously pointed out on numerous occasions, the DVDs/videos constitute six (6) hours plus of naturist videos. If the government maintains that every minute of those six (6) hours of video constitute child pornography, that is one matter. If, however, the government maintains that there is one particular area/scene that is or constitutes child pornography, then the government should designate the scene or area so defense counsel is not left in a position of defending movies from the credits and the introduction at the beginning of the film through the credits and disclaimers at the end of the film.

In an unreported decision on Westlaw, the case of *United States v. Roller,* (2009 Westlaw 3762417 N. D. Cal. 2009) the government stated that the Defendant had been provided full discovery and that the indictment provided sufficient details of the charges but went on to state, "However, out of an abundance of caution if this case were to proceed to trial the following list of images represents some of the images that the government anticipates that it would

3

present to the jury on the receipt charge… Similarly, out of an abundance of caution if this case were to proceed to trial, the following list of images represents some of the images that the government anticipates that it would present to the jury on the possession charge…" The Court then went on to state as follows: "The Court finds that a Bill of Particulars is not required <u>in light of the discovery and information provided to Defendant</u>. The government is expected, however, to advise the Defendant, Roller, if it intends to add to the list of images to be offered in its case-in- chief."

    In fairness to defense counsel in this matter the government should be required to designate at minimum what it is going to argue is lewd and lascivious from the hours of video that it exclusively possesses which show children in naturist settings none of which include "explicit sexual acts." To permit the government to hold these six (6) hours of videos in its exclusive possession until trial, only permitting the defense attorneys to look at the entire videos in real-time on government premises with government equipment, prohibits defense counsel from analyzing and determining exactly what portion of the hours of video might be subjectively determined or claimed as lewd and lascivious representations. Again, if the government maintains that the entire DVDs/videos representing six (6) hours of naturists videos is lewd and lascivious, that is one thing, but if during trial the government is going to freeze certain frames or certain segments of the

videos and argue that they are "lewd and lascivious," they should be compelled to disclose to defense counsel now which portions they will argue to be lewd and lascivious. At this point there has been only a suggestion of what parts the Government will claim is lewd and lascivious and the Government maintains it is not bound by that suggestion.

Several courts have observed that most of the categories of sexually explicit conduct for purposes of child pornography under 18 USC § 2256 are in most circumstances clearly defined and easily recognized. Numerous courts have also stated that the "lascivious exhibition of the genitals or pubic area" (18 USC § 2256(2)(A)(v)) is far more subjective and open to interpretation due to the use of the term lascivious. (See *United States v. Battershell, 457 F. 3d 1048 (9th Cir. 2006) and United States v. Burnette, 256 F. 3d 14 (1st Cir. 2001).* Those same courts have held that the identification of images that are lascivious will almost always involve to some degree a subjective and conclusory determination on the part of the viewer and that the term "lascivious" calls into play imprecise value judgments raising issues comparable to those that arise when testing for obscenity. In fact, the Second Circuit has explained that the term "lascivious" is not self-defining and thus jurors and judges need neutral references and considerations to avoid decisions based on individual values or the revulsion potentially raised in a

child pornography prosecution. (See *United States v. Rivera,*546 F.3rd 245 (2d Cir. 2008)).

Indeed even the factors frequently used to analyze lasciviousness (the so-called Dost factors) have provoked misgivings.  Yet the Dost case (*United States v. Dost,* 636 F. Supp. 828 (S.D. Cal. 1986)) has stated the trier of fact in determining lasciviousness should look to…among any others that may be relevant in the particular case, the following factors:  (1) Whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2)  whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

So without providing a Bill of Particulars with respect to six (6) full-length naturist DVDs/videos, defense counsel is forced to spend hours at the United States Postal Inspection Service facility watching (in real-time) naturist movies to determine which of the six (6) factors above could be present in any given scene in over six (6) hours of video.  That requirement is unfair if not ridiculous.

6

Therefore, Defendant, through counsel, asked the Magistrate on three (3) occasions and is now asking this Court for an order compelling a Bill of Particulars as to which specific scenes or depictions are going to be argued to constitute lewd and lascivious depictions of minors at the trial of this case.

Alternatively, if the government possesses any reports or summaries indicating that videos or portions thereof seized from defendant do not contain child pornography, those reports or summaries would constitute *Brady* material and should be disclosed. For example, if portions of the videos depict images of general interest or images that do not constitute illegal pornography, that should be the subject of a *Brady* disclosure to the defense.

The government appears to recognize its obligation to disclose evidence favorable to the accused when it is material to guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). This duty covers not only exculpatory information but also information that could be used to impeach government witnesses. *Giglio v. United States,* 405 U.S. 150 (1972). However, the disclosure has to be sufficient for defense counsel to be able to make "effective use" of it, *United States v. Coppa,* 267 F.3d 132, 142 (2d Cir. 2001), and not be denied access to exculpatory information known only to the government. *United States v. LeRoy,* 687 F.2d 610, 619 (2d Cir. 1982).

In view of the nature of the charge brought against the defendant, the

government should be further directed to disclose under *Brady* all information it has that may be exculpatory and specify the scenes it claims are lewd and lascivious.

## DEFENDANT'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION DENYING HIS MOTION TO SUPPRESS STATEMENTS

The Magistrate Judge determined that Mr. Wilson's admissions on the day his home was searched were voluntary and not the result of coercion. The Magistrate's opinion is grounded on the premise that since Mr. Wilson did not leave the house when agents advised he could do so and did not ask for clothes, there is no evidence that any of the admissions Mr. Wilson made were coerced. (Doc 61, pp 13-15) The Magistrate does not believe that the 90 minutes the Defendant was dressed only in his pajama bottoms while the agents searched his house is material to the claim of coercion because there was no evidence that the agents were responsible for his lack of clothing. The Magistrate ignores the trauma and anxiety caused by police coming to one's home at 6 a.m., pounding on the door and making the citizen of the home step outside in just pajama bottoms. To the Magistrate, coming at 6 a.m. is acceptable because "the defendant had to get up soon anyway he was a teacher" although there is nothing in the record to suggest what time Mr. Wilson had to be at school or whether he was even working

that day (Doc. 61, p.15).  The dismissive tone of the Magistrate's opinion ignores the psychology behind law enforcement's tactics.

The Magistrate errs because he evaluates the question of whether coercion occurred from the viewpoint of the police.  Instead, the Magistrate should have examined the Defendant's arguments from the Defendant's perspective.  Certainly the arrival at 6 a.m. of the eight agents, dressed in tactical gear, with guns holstered, created a "police-dominated atmosphere" aimed at throwing the defendant into fear, anxiety and ultimately cooperation.  It is psychological coercion and coercion is determined from the perspective of the suspect. *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980); *Berkemer v. McCarty,* 468 U.S. 420, at 442, 104 S.Ct., at 3151 (1984).

At the evidentiary hearing Postal Inspector Adkins testified that the eight police arrived in at least four cars at Defendant's home at 6 a.m. and knocked loudly on the door (T 31-33).  In a short period of time the Defendant came to the door dressed in his pajama bottoms only (T-33).  He was asked to step outside (T-33).  The day is the 26th of March and it is still cold before the sun rises.  There is no testimony by Inspector Adkins that Wilson was offered the opportunity to return to his bedroom or a closet to get any additional clothes to cover himself.  Initially he is kept outside in the dark and the cold for at least ten minutes without a shirt or shoes.  When he is allowed to reenter his own house he is given the choice

of leaving but at the same time there is nothing in the record to suggest that the police offered to allow him to get clothes, shoes or leave in his car.  The only offer made by law enforcement was that he may leave and abandon his home to the eight police (T-19).  The Postal Inspector testified he was aware that Defendant was a 42 year old elementary school teacher without history of previous arrests or convictions (T-33-34).  Despite the fact Mr. Wilson might be educated there is no evidence that he is sophisticated with police or their procedures; if anything, all the testimony from Inspector Adkins suggests Wilson was naïve and guileless to the point of providing a written statement and signing another Miranda waiver, almost as if he felt guilty about not answering the officers questions.  An examination of the evidence reveals the only conclusion possible, that Defendant was psychologically coerced into compliance because he was cold, embarrassed to be in a state of undress for 90 minutes, and in front of law enforcement officers of both sexes, as they intruded on the privacy of his home.

It is obvious that such an environment is created for no purpose other than to subjugate the individual to the will of his examiner. The created atmosphere carries its own badge of intimidation. To be sure, this is not physical intimidation, but it is equally destructive of human dignity. "The current practice of *in communicado* interrogation is at odds with one of our Nation's most cherished principles—that the individual may not be compelled to incriminate himself. Unless adequate

10

protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice." *Miranda v. Arizona*, 384 U.S. 436, 457-58, 86 S. Ct. 1602, 1619, 16 L. Ed. 2d 694 (1966).

The Magistrate's opinion fails to recognize that interrogation tactics need not be violent or physical in nature to be deemed coercive. Psychological coercion is equally likely to result in involuntary statements, and thus is also forbidden. *Mincey v. Arizona,* 437 U.S. 385 at 401 (1978), provides us with guidance:

> "There were not present in this case some of the gross abuses that have led the Court in other cases to find confessions involuntary, such as beatings ... or "truth serums".... But the "blood of the accused is not the only hallmark of an unconstitutional inquisition" ... Determination of whether a statement is involuntary "requires more than a mere color-matching of cases." It requires careful evaluation of all the circumstances of the interrogation."

(citations omitted) (footnote omitted); *see also Spano v. New York,* 360 U.S. 315 at 321 (1959) "[A]s law enforcement officers become more responsible, and the methods used to extract confessions more sophisticated, our duty to enforce federal constitutional protections does not cease."). *See also Collazo v. Estelle*, 940 F.2d 411, 416-17 (9th Cir. 1991)

Nor should it matter that Postal Inspector Adkins and the Government deny that the Defendant's state of undress did not flow from police conduct but who chose to arrive at Mr. Wilson's home at 6 a.m.? What would they expect him to be wearing? And why should Mr. Wilson be faulted for answering the door in his pajama bottoms rather than getting dressed? Did the Magistrate consider that if Mr. Wilson took the time to get properly dressed his door wouldn't have been standing but instead broken apart? The Magistrate ignores the testimony that the knocking was purposely loud (T-32). Moreover, the Magistrate, who is willing to assume that the Defendant had to get up shortly anyway, assumes he also wakes up clear headed ready to parley with the police. The Magistrate ignores the fact that the Postal Inspector knew his target would be sleeping and doesn't question why (T-32).

The Magistrate should not place too great weight on the police officer not admitting that his tactics were aimed at pressuring a guileless defendant into incriminating himself. After all, if the police officer's admission in *Brewer v. Williams*, 430 U.S. 387, 399, (1977), that he had specifically intended to obtain incriminating statements by conversing with the accused was sufficient cause to exclude the resulting inculpatory statements from evidence, then, an officer's self-serving statement that he had no intention of eliciting a confession that was obtained in the absence of counsel should carry little weight. Therefore, the court

must look to the objective evidence and ask whether the officer's conduct might reasonably have been expected to result in the utterance of an incriminating statement. <u>Cannistraci v. Smith</u>, 470 F. Supp. 586, 593 (S.D.N.Y. 1979).

For these reasons and the cases and arguments made in the brief Defendant Wilson asks that the Court reverse the Magistrate's Report and Recommendation as to the Motion to Suppress Statements.

<u>The Magistate Erred in Ruling Defendant's<br>Subsequent Admissions Were Admissible</u>

The factors that are relevant to determining the effect of previous police coercion have been spelled out in *United States v. Patterson,* 812 F.2d 1188, 1192 (9th Cir.1987). They are whether (1) there was a break in the stream of events sufficient to insulate the statement from the effect of the prior coercion, (2) it can be inferred that the coercive practices had a continuing effect that touched the subsequent statement, (3) the passage of time, a change in the location of the interrogation, or a change in the identity of the interrogators interrupted the effect of the coercion, and (4) the conditions that would have precluded the use of a first statement had been removed.

The application of these factors to the facts of the case at hand is similar to the task mandated by the Supreme Court in *Wong Sun v. United States,* 371 U.S. 471 at 487–88, 83 S.Ct. 407 at 417, 9 L.Ed.2d 441 (1963). We must determine

"whether, granting establishment of the primary illegality, the evidence to which ... objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." (quoting Maguire, *Evidence of Guilt,* 221 (1959)). *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975), also provides considerable guidance.   In this case *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant.... And the burden of showing admissibility rests, of course, on the prosecution.  See *Collazo v. Estelle*, 940 F.2d 411, 421 (9th Cir. 1991).

   Here within  35 minutes of asking for a lawyer the Defendant, still naïve and guileless, nor free of the police and having at least 4 police cars surrounding his home offers to write a statement denying he ever molested a child and that the DVDs *he had ordered* did not contain sex.  Thirty five minutes is not a sufficient time to purge the primary taint caused by the psychological coercion arising from Mr. Wilson's first confrontation with law enforcement as detailed here.

For these reasons and the arguments and cases cited in the Defendant's earlier brief, Defendant asks that the Magistrate's Report and Recommendation be reversed.

**MAGISTRATE'S DENIAL OF DEFENDANT'S MOTION FOR THE GOVERNMENT TO ALLOW COURT TO DETERMINE WHETHER DVD'S SHOULD BE TURNED OVER TO DEFENDANT DENIES DEFENDANT DUE PROCESS**

Defendant moved the Magistrate to Order the Government to Provide the DVDs in this case to allow the Court to determine whether they could be turned over to the Defense Counsel (Doc. 52).  At the evidentiary hearing on January 29, 2013, the Magistrate Judge orally denied Defendant's motion.  See, Evidentiary Hearing Transcript (Doc. 55, pp 3-8).

The Magistrate refused to view the DVDs despite counsel's representations that the DVD's were naturist and protected under *Sunshine Book Co. v. Summerfield*, 355 U.S. 372 vacating 249 F.2d 114 (D.C. Cir. 1957).  The refusal of the Magistrate to view the videos in light of the Government's contention that they are lewd and lascivious serves only to punish the Defendant even before he is tried. Earlier in these objections Defendant argued that  " Numerous courts have also stated that the "lascivious exhibition of the genitals or pubic area" (18 USC § 2256(2)(A)(v)) is far more subjective and open to interpretation due to the use of the term lascivious. (See *United States v. Battershell,  457 F. 3d 1048 (9th Cir.*

*2006)* and *United States v. Burnette, 256 F. 3d 14 (1st Cir. 2001)*.  Those same courts have held that the identification of images that are lascivious will almost always involve to some degree a subjective and conclusory determination on the part of the viewer and that the term "lascivious" calls into play imprecise value judgments raising issues comparable to those that arise when testing for obscenity. In fact, the Second Circuit has explained that the term "lascivious" is not self-defining and thus jurors and judges need neutral references and considerations to avoid decisions based on individual values or the revulsion potentially raised in a child pornography prosecution. (See *United States v. Rivera, 546 F.3rd 245 (2d Cir. 2008)*).

   In response the Government argues that if the Court were to view these videos it might rule and make the Government's case *res judicata* (Doc. 55, p. 4). But the Government should be interested in seeing that justice is done, not fearing a ruling that a naturist video is not lewd and lascivious.  These videos should have been viewed a long time ago by the Magistrate particularly when even the Postal Inspector said they did not contain anything resembling typical child pornography, instead they depicted naked boys in naturist settings without sexual contact  but despite these qualifications were still described as "lewd and lascivious" the broadest arrow in the government's quiver.

For reasons of fairness, due process and judicial economy this Court should, at a minimum, review the DVDs to determine whether they can be provided to defense counsel for trial preparation and at best examine the videos to see if they are in fact lewd and lascivious so that if proved to a jury their very possession mandates a mandatory five year sentence.

This 8th day of April 2013.

Respectfully submitted,

/s/ *Mark V. Spix*
Georgia State Bar No. 672750

Mark V. Spix, P.C.
The Adrian Lowell Building
3975 Roswell Road,
Atlanta, Georgia  30342
Ph:  404-266-0000, Ext 1101
spix@bellsouth.net

/s/*Howard J. Manchel*
Ga. State Bar No. 468550

Manchel, Wiggins & Kaye, LLC
729 Piedmont Avenue, NE
Atlanta, Georgia 30308
404-522-1701
hjmanchel@aol.com

CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing **Defendant Wilson's Objections to Magistrate's Report and Recommendations**, using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record for the government: Jill Steinberg, Assistant U.S.

Attorney;  Suite 600, Richard Russell Building; 75 Spring Street, SW Atlanta, Georgia  30303.

    This 8th day of April 2013

                                              *Howard J. Manchel*