IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| JOSEPH MONROE WILSON, | : | MOTION TO VACATE |
| BOP ID 63877-019, | : | 28 U.S.C. § 2255 |
|    Movant pro se, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 4:14-CV-315-HLM-WEJ |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
|    Respondent. | : | 4:12-CR-23-1-HLM-WEJ |

## FINAL REPORT AND RECOMMENDATION

Proceeding pro se, Joseph Monroe Wilson has filed a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [104].[1] Because Mr. Wilson executed an enforceable waiver of his right to attack his conviction and sentence under § 2255 (see Plea Agmt. [90] 8), the undersigned **RECOMMENDS** that Mr. Wilson's Motion be **DISMISSED** and that a Certificate of Appealability be **DENIED**.

In 2012, Mr. Wilson was indicted for having (1) "knowingly received one or more visual depictions of minors engaging in sexually explicit conduct . . . in violation of [18 U.S.C. § 2252(a)(2) and (b)(1)]," and (2) "knowingly possessed a Dell laptop

---

[1] The CM/ECF docket numbers in this Final Report and Recommendation are drawn from 4:12-CR-23-1-HLM-WEJ, except where explicitly indicated otherwise.

computer that contained one or more visual depictions of minors engaging in sexually explicit conduct, . . . in violation of [18 U.S.C. § 2252(a)(4)(B) and (b)(2)]." (Indictment [1] 1-2.)

Mr. Wilson reports that after he was indicted he retained a trio of lawyers (whom he paid "over $120,000"), a jury consultant (whom he paid "many thousands of non-refundable dollars"), and a forensic expert (whom he paid an undisclosed amount). (Mem. of Law [104-2] 57.) Nonetheless, on the eve of trial, Mr. Wilson elected to plead guilty to Count Two of the Indictment.

Mr. Wilson's Plea Agreement provided: "The Defendant admits that he is pleading guilty because he is in fact guilty of the crime charged in Count Two of the indictment." (Plea Agmt. 1.) The Plea Agreement further provided:

> LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground [with exceptions not relevant here].

(Id. at 8.) In addition, Mr. Wilson signed a Certificate stating:

> I have read the indictment against me and discussed it with my attorney. <u>I understand the charges and the elements of each charge that the Government would have to prove to convict me at a trial.</u> I

2

>have read the foregoing Plea Agreement and carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement and I voluntarily agree to them. <u>I also have discussed with my attorney the rights I may have to appeal or challenge my conviction and sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated therein, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding</u>. . . .

(Id. at 11 (emphasis added).)

The Honorable Robert L. Vining, Jr. accepted Mr. Wilson's plea, and, after calculating that the applicable sentencing range under the United States Sentencing Guidelines was 70 to 87 months, departed downward to impose a 36-month term of imprisonment. (See Sentencing Hr'g Tr. [102] 43-44.) Mr. Wilson did not file a direct appeal. Rather, he has now filed a pro se § 2255 motion.

Direct appeal and collateral attack waivers included in plea agreements are generally enforceable in this circuit. See, e.g., Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005) (collateral attack waivers); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993) (direct appeal waivers). And, "[a] waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues–indeed, it includes a waiver of the right to appeal blatant error." United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999).

3

The prerequisite to enforcement of a direct appeal and/or collateral attack waiver is a finding that it was made "knowingly and voluntarily." Bushert, 997 F.2d at 1352; see also Patel v. United States, 252 F. App'x 970, 974 (11th Cir. 2007) (per curiam) ("Appeal waivers are valid if they are made knowingly and voluntarily."). In at least two circuits, it appears that the government can establish that the waiver of appeal and/or collateral attack rights was made knowingly and voluntarily simply by pointing to clear language of the sort included in the Plea Agreement and Certificate signed by Mr. Wilson. See, e.g., United States v. Portillo, 18 F.3d 290, 292 (5th Cir. 1994); United States v. DeSantiago-Martinez, 38 F.3d 394, 395 (9th Cir. 1994) ("In our view, a Rule 11 colloquy on the waiver of the right to appeal is not a prerequisite to finding that the waiver is valid; rather, a finding that the waiver is knowing and voluntary is sufficient.").

In the Eleventh Circuit, "[i]n most circumstances, for a sentence appeal waiver to be knowing and voluntary, the district court must have specifically discussed the sentence appeal waiver with the defendant during the Rule 11 hearing." Bushert, 997 F.2d at 1351. In a limited set of cases, a waiver may still be found to have been knowing and voluntary if "the record clearly shows that the defendant otherwise

understood the full significance of the waiver." United States v. Benitez-Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997).

In examining the Rule 11 hearing transcript, the Eleventh Circuit has instructed district courts that "[t]here is a strong presumption that the statements made during the plea colloquy are true" and that, "[c]onsequently, a defendant bears a heavy burden to show that his statements under oath were false." Patel, 252 F. App'x at 975 (citations omitted). A defendant's later "self-serving statements [that] appear to be a last-minute attempt to escape the preclusive effect of the appeal waiver," when "in direct conflict with his statements during the plea colloquy," and supported by "no evidence to challenge the veracity of his sworn testimony," warrant neither an evidentiary hearing, nor a determination that an appeal waiver should be set aside. Id.

With those principles in mind, the undersigned turns to the relevant portion of the Rule 11 hearing transcript, which includes the following exchange between Judge Vining and Mr. Wilson:

> [The Court:] There are certain appeals that you can take. A year from now you may look back and say I just think that old judge was wrong. I want to set this right. I don't think my sentence was right. I don't think my sentence was reasonable.
>
> On page 8, you are giving up some appeal rights that you ordinarily have. We also have what are called 2255 proceedings.

5

> That is a proceeding down the road where you go back and say I want that sentence corrected or set aside. It's called habeas corpus. You are giving up your right to do that. . . .
>
> [Mr. Wilson:] Yes, sir.
>
> . . .
>
> Q. You have any questions you want to ask me about your plea or about this Plea Agreement?
>
> A. I don't believe so, Your Honor. You have been very thorough.
>
> Q. If you have any at any time before sentencing or at sentencing, you can ask them. I prefer you have your lawyer get in touch with the Probation Department; it will ultimately get to me.
>
> A. Thank you.

(Rule 11 Hr'g Tr. [94] 15-17.)

This exchange more than adequately establishes that Judge Vining specifically discussed with Mr. Wilson the direct appeal and collateral attack waiver provision of his Plea Agreement during the Rule 11 hearing, making such waiver enforceable in the manner preferred under Eleventh Circuit precedent. Moreover, the plain language of Mr. Wilson's Plea Agreement and Certificate would, in any event, establish that he clearly understood the full significance of the direct appeal and collateral attack waiver he agreed to in the Plea Agreement.

6

Mr. Wilson also argues that his plea was not entered "knowingly" because he did not understand the nature of the crime with which he was charged. (See, e.g., Mem. of Law 67-72.) The Rule 11 hearing transcript refutes that claim as well.

> [The Court:] . . . Have you gone through that Plea Agreement with your lawyers?
>
> [Mr. Wilson:] Yes, sir, I have.
>
> Q. Has it been explained to you?
>
> A. Yes, in detail.
>
> Q. Has it been explained to your satisfaction?
>
> A. Yes, sir.
>
> Q. The Agreement says that in this you have received a copy of the Indictment which is Criminal Action, 4:12CR23. You read it and you hereby plead guilty to Count Two of that Indictment.
>
> Count Two of the Indictment says that beginning on a date unknown to the Grand Jury, but at least by March 26, 2012, in the Northern District of Georgia, the Defendant, Joseph Monroe Wilson, knowingly possessed a Dell laptop computer that contained one or more visual depictions of minors engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 2256(2), said depictions having been (a) produced using minors engaged in sexually explicit conduct, and (b) shipped and transported in interstate and foreign commerce, by any means, including by computer, in violation of Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2).

> Do you understand what you're charged with?
>
> A. Yes, your Honor.
>
> Q. You understand the nature of the charge?
>
> A. Yes, your Honor.
>
> Q. How do you plead to Count Two of that Indictment, Guilty or Not Guilty?
>
> A. I plead Guilty.

(Rule 11 Hr'g Tr. 4-5.)

The Eleventh Circuit has held that "[f]or simple charges . . . a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice." United States v. DePace, 120 F.3d 233, 237 (11th Cir. 2001) (quoting United States v. Dayton, 604 F.2d 931, 937-38 (5th Cir. 1979) (en banc)). This is particularly true when dealing with a well-educated, sophisticated defendant like Mr. Wilson,[2] facing a simple charge. Id.

Thus, in the circumstances of this case, it is abundantly clear from the record of prior proceedings that the collateral attack waiver in Mr. Wilson's Plea Agreement is enforceable and should be enforced. Consequently, there is no need to reach any

---

[2] Mr. Wilson is a college graduate who was teaching in the public school system at the time of his indictment.

8

other issue raised in Mr. Wilson's § 2255 motion, because he waived the right to raise such issues in a collateral attack on his conviction and sentence.

The Rules Governing Section 2255 Proceedings for the United States District Courts provide that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the movant is not entitled to relief, the [Court] must dismiss the motion and direct the clerk to notify the moving party." 28 U.S.C. foll. § 2255, Rule 4(b) (emphasis added). Because it is clear from the record of prior proceedings in this case that the collateral attack waiver in Mr. Wilson's Plea Agreement is enforceable, the undersigned **RECOMMENDS** that this Court **DISMISS** Mr. Wilson's § 2255 motion.

The undersigned further **RECOMMENDS** that a Certificate of Appealability be **DENIED** because Mr. Wilson cannot show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" and that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Clerk is **DIRECTED** to terminate the referral of this case to the undersigned.

9

**SO RECOMMENDED**, this 19th day of December, 2014.


_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE